## SACHS v. MARYLAND CASUALTY CO.

(Supreme Court, Appellate Division, Second Department. December 24, 1915.)

1. INSURANCE ☞513—LIABILITY INSURANCE—EXPENSE OF DEFENDING SUIT.
    Where a policy indemnifying an employer against liability for injuries to his employés read that it indemnified assured "against loss from the liability imposed by law upon the assured," containing a stipulation that the insurer might defend, though such insurer was not required to defend a suit against the assured, it was liable to pay him the sums that the litigation legally imposed.

    [Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞513.]

2. INSURANCE ☞513—LIABILITY INSURANCE—ASSUMPTION OF DEFENSE BY INSURER—EFFECT.
    Where a policy of insurance indemnifying assured against loss from the liability imposed by law for injuries to his employés subjected a claim for an accident or an action brought thereon to the exclusive control, defense, and management of the insurer, which undertook the defense of such a suit and then abandoned it on the expressed ground that the assured's agent had knowledge of the accident three or four days after it happened, but did not report it to the insurer, such insurer, although the assured successfully defended the suit, could not, in the latter's suit against it to recover the expenses of the litigation, assert that the claim was not covered by the policy, since the insurer, irrespective of a strict estoppel in pais, cannot assume to operate under a provision in its favor and then repudiate it.

    [Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞513.]

Appeal from Appellate Term, Second Department.

Action by Nathan Sachs against the Maryland Casualty Company. Judgment for plaintiff, and from an order of the Appellate Term reversing it, he appeals. Order reversed, and judgment affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and RICH, JJ.

Paul Grout, of New York City (Charles B. La Voe, of New York City, on the brief), for appellant.

James J. Mahoney, of New York City (F. Wright Moxley, of New York City, on the brief), for respondent.

THOMAS, J. [1, 2] The plaintiff would recover from the defendant, insuring against loss, the expense of successfully completing the

defense of an action brought against him by a servant for personal injuries. The defendant, as insurer, had initiated and entered upon the defense, but, after issue joined, abandoned the case and asserted that it was not liable for the accident under the policy. The defendant's argument is that, as the event showed, the employer was not legally liable to the servant; therefore it was not liable, inasmuch as the policy is to indemnify the assured "against loss from the liability imposed by law upon the assured." The policy is intended to indemnify; it also contains a stipulation to defend. Under authoritative decisions the insurer is not required to defend, but is liable to pay to the assured the sums that the litigation with the injured person shall legally impose. Although there was forcible judicial opinion to the contrary, the above rule cannot be disturbed in this court. Cornell v. Travelers' Ins. Co., 175 N. Y. 239, 67 N. E. 578; Lawrence v. General Accident Assurance Corp., Limited, 124 App Div. 545, 108 N. Y. Supp. 939, affirmed 192 N. Y. 568, 85 N. E. 1112.

But there is an extension of the rule to the effect that if the insurer undertake the defense he cannot assert that the claim for damages is not one covered by the policy. That is just, for although the language of the policy introduces it as an agreement to indemnify, the later clauses subject a claim for an accident and an action brought thereon to the exclusive control, defense, and management of the insurer. The process immediately after service must be delivered to it; the assured agrees to defend it "in the name and on behalf of the assured," unless it elect to settle it, or to pay the assured the indemnity up to the amount limited. Correspondingly the agreement eliminates the assured from participation in litigation or negotiation. He may not voluntarily assume any liability, nor without the consent of the company "incur any expense or settle any claim, except at his own cost, nor interfere in any negotiation for settlement or in legal proceeding," except to provide immediate surgical relief; when requested, he must aid by procuring information, evidence, attendance of witnesses, and in effecting settlements and prosecuting appeals. The assured is required to give place to the insurer in every particular.

But it is said that such stipulations apply only to an "accident covered by this policy." The policy is so written, and furnishes the insurer an opportunity to decide whether he will undertake the defense, or, disclaiming liability, leave that question to be determined by the judgment. It can appropriate the case and oust the insured only when the policy covers it. Hence, when it takes possession, it is a decision on its part that the case does fall under the policy. But its present attitude is that it can so decide, undertake the defense, then undo its decision, and abandon the defense. The decisions cited above construe the policy as favorably to the insurer as is consistent with the authority reserved to it to assume the mastership of the controversy. But it should not be permitted to dominate when it will, and at will cast aside the duty to defend that goes with the jurisdiction it has assumed. The assured and his rights are subject to its election; he should not be exposed to its fitful caprice. It is not a question of

technical waiver or estoppel, but a matter of agreement. The company conditionally agrees to undertake the defense, and in that case the assured is excluded from interference. With what good faith could it assert that in defending it does not do so in compliance with the policy.

But it may be said the assured continued the defense and succeeded. The judgment shows that there was no liability imposed by law. That is true. But that result was obtained presumably because the assured, to save the insurer as well as himself from damages in whole or in part, took up the defense where the company had left it. Had the insurer continued the defense, the result probably would have been the same; but that would not have established that by right it could assume the defense and abandon it unfinished. It was the right, if not the duty, of the assured to take up the defense interrupted by the insurer's defection, and, if possible, save himself and the indemnitor. That duty the insurer had assumed and put aside. The decisions, as stated, do not permit an insurer, under such policy as that in question, to disavow liability during the progress of a defense assumed by it. Glens Falls P. C. Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897; Rosenbloom v. Maryland Casualty Co., 153 App. Div. 23, 137 N. Y. Supp. 1064; Brassil v. Maryland Casualty Co., 210 N. Y. 235, 104 N. E. 622, L. R. A. 1915A, 629, affirming 147 App. Div. 815, 133 N. Y. Supp. 187; Mason-Henry Press v. Ætna L. Ins. Co., 211 N. Y. 489, 105 N. E. 826. In some of the authorities cited, the facts show that the abandonment of the defense left the insured in a more disadvantageous position than in the present instance. But in my judgment the assured need not prove an estoppel in pais. The insurer cannot assume to operate under a provision in its favor and then cast the burden on the assured upon the plea that the latter cannot prove that he is the worse for it. The insurer chose its position; there were alternatives; it freely selected one; it should not be permitted to toss that aside, and take another. It acted under its stipulation.

There is another view of the matter. The defendant refused to go forward with the litigation upon the expressed ground that the assured's agent, Burston, had knowledge of the accident three or four days after it happened, but did not report it to the defendant until three days before the return day of the summons. The agent testified that he had no knowledge of it up to the time that he received the summons and complaint from the janitor, with whom it was left pursuant to an order for substituted service. There is no evidence that the assured had knowledge of the accident, as he was absent from October 1, 1908, to January 31, 1909, and Burston had charge of the property. The order for substituted service was made on December 28, 1908, and the summons was returnable on January 7, 1909. When Burston saw the defendant's representative, the latter questioned him for the purpose of drawing the answer; it was drawn and sent to him, by whom it was verified. So the letter by Ford, defendant's manager, remitting the papers, appears to be quite incorrect, and the ground given for their return untenable. Moreover,

Burston stated that the defendant's agent received the papers without reservation.

The order of the Appellate Term should be reversed, and the judgment of the Municipal Court affirmed, with costs. All concur.

