**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,**

v.

**INTERNATIONAL FLAVORS & FRAGRANCES, INC., Defendant.**

No. 80 Civ. 6722 (MP)

United States District Court, S.D. New York.

April 28, 1986.

Williamson & Williamson, P.C. by Walter Williamson, New York City, for plaintiff.

Moses & Singer by Richard W. Brewster, Fulton, Duncombe & Rowe by George Rowe, Jr., Michael J. Gaynor, New York City, for defendant.

## OPINION

MILTON POLLACK, Senior District Judge.

This is a motion by International Flavors and Fragrances (IFF) for a directed verdict, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, on the motion therefor at the close of the case, on which decision was reserved, for a judgment notwithstanding the verdict (J.N.O.V.) pursuant to Rule 50(b), and alternatively, for a new trial pursuant to Rule 59.

### Background

Commercial Union Insurance Co. (CU) issued four comprehensive liability insurance policies to IFF for each of the years 1976 through 1979. The policies obligated CU to defend any suit against IFF which alleged a state of facts covered by the policies, regardless of whether such allegations were groundless, false, or fraudulent. Each policy contained a products hazard insurance clause which provided coverage for bodily injury and property damage arising out of the named insured's fragrance and for damages from justifiable reliance upon representations or warranties made with respect to the sales thereof.

On March 14, 1979, IFF was sued by Plough Inc. in Memphis, Tennessee for $10,000,000 for losses suffered by Plough from use of a fragrance that IFF had sold to Plough to be employed in its suntan lotion, Tropical Blend. In the lawsuit, Plough claimed that an ingredient in IFF's fragrance, 6-Methyl Coumarin (6-MC), had caused allergic reactions to some Tropical Blend users and as a result, Plough had incurred great expense in defending and settling claims of injury from the use of Tropical Blend, and was forced to destroy millions of units of its product.

Specifically, Plough alleged that:

[I]n December of 1977, testing sponsored by Plough established that 6-Methyl Coumarin, an ingredient of the [IFF fragrance], caused the reaction complained of by the consumers. Furthermore, it was determined that the 6-Methyl Coumarin in the supplied fragrances existed in concentrations much higher than that originally represented by I.F.F.... As a result of the aforementioned complaints and the actions of I.F.F...., Plough destroyed approximately 2.7 million units of its product during the years 1976, 1977, and 1978.

In addition, Plough alleged "that as a result of the actions of I.F.F. ..., Plough incurred great expense in defending and settling claims by consumers who alleged injury as a result of using Plough's coconut fragrance suntan products that contained fragrances supplied by I.F.F...."

Moreover, Plough claimed that IFF had breached its warranty of fitness and had falsely represented that its fragrance was safe for the use intended.

The Plough complaint stated:

that in the summer of 1976 Plough had advised IFF that it had received numerous complaints of skin irritations from users of suncare products containing IFF's fragrances;

that Plough had initially asked IFF for a qualitative breakdown of the ingredients in the fragrance and that IFF had refused to comply with the request;

that in 1977, IFF finally complied with the request for a qualitative breakdown of the fragrance so that Plough could determine whether any ingredients were the cause of the allergic reactions;

that Plough engaged in extensive research and in December 1977, testing sponsored by Plough established that the 6-MC ingredient in IFF's fragrance caused the toxic reaction complained of by consumers; and

that the 6-MC in IFF's fragrance existed in concentrations much higher than IFF originally represented to Plough.

The complaint also charged IFF with falsely representing the safety of its product, and intentionally withholding the information that 6-MC was an ingredient in the fragrance. Further, the complaint alleged, that at all relevant times, IFF knew that its fragrance contained an irritating ingredient which when used in suntan products would result in consumer complaints and injury to some potential users of the product.

Upon receiving the complaint in the Plough action filed in Memphis, Tennessee, IFF immediately notified Commercial Union of the action and requested that Commercial Union defend it. Commercial Union immediately retained a Memphis law firm which appeared in the action in the defense of IFF's interests.

After defending IFF for approximately two months, a local claims manager of Commercial Union sent a letter dated May 31, 1979, to IFF stating that it had decided to begin to investigate the accident "with a complete reservation of all rights under the policy." IFF refused to accept the continuation of the defense of the lawsuit by Commercial Union's lawyers on such terms, and Commercial Union then instructed its lawyers to withdraw its defense of the suit. However, Commercial Union did not definitively disclaim coverage; Commercial Union left the issue of coverage in doubt and left IFF uncertain of its rights under the policies. It was not until July 8, 1980, 16 months after the Plough suit was filed and 14 months after it had withdrawn from the defense of the suit, that Commercial Union for the first time disclaimed coverage of the claims because of late notice to it of the 1976 and 1977 occurrences.

Four and a half months later (20 months after inception of the Plough suit, on November 26, 1980, Commercial Union filed this declaratory judgment action seeking a determination (1) that it was not obligated to defend IFF in the Plough action and (2) that it was not obligated to pay any judgment that may be rendered against IFF in the Plough action. After the termination of the Plough suit in 1983, IFF counterclaimed against Commercial Union for recovery under the policies of its defense

costs and for the $750,000 it paid to Plough to settle the action.

Commercial Union contended that it was not obligated to defend the Plough suit, nor to reimburse IFF for the sum paid to settle the Plough claims because IFF failed to give it timely notice of the occurrences on which the Plough action was based after IFF learned that its fragrance was implicated. Specifically, Commercial Union claimed that in September 1977, IFF knew sufficient facts about the occurrences from which it could reasonably conclude that a lawsuit might be brought against it by Plough and that at that time, IFF had a duty to notify Commercial Union thereof.

IFF countered that it had no inkling and no reasonable cause to believe that it might be sued and that failure to give notice to Commercial Union in September 1977 was excused by its good faith belief of nonliability. Moreover, it contended that Commercial Union had waived any right to assert the defense of untimely notice by proceeding in March 1979 to defend IFF, without reservation, and with knowledge of a self-evident, possible defense of late notice, and further by delaying for more than a year, after it had assumed the defense of the Plough suit, to notify IFF that it disclaimed coverage on the ground of late notice of the claim.

The case was tried before the Court and a jury in April 1986. Decision on motions for a directed verdict on the declaratory relief sought viz., the duty of Commercial Union to defend and the obligation to repay IFF for Plough's recovery, were reserved at the close of the evidence. The jury then rendered a cryptic general verdict that "IFF is not entitled to damages" without further explanation.

## DISCUSSION

*Duty to Defend*

■ The four insurance policies clearly obligated Commercial Union to defend any suit against IFF which alleged a state of facts covered by the policies, regardless of whether such allegations were groundless, false, or fraudulent.

The Plough complaint alleged losses from bodily injury and property damage suffered in 1976 through 1978, resulting from the use of IFF's fragrance containing 6–MC and from reliance on representations and warranties made by IFF concerning the safety of its fragrance. There is no question that these allegations placed the claims within the scope of the products hazard insurance coverage. In fact, in oral argument Commercial Union's counsel admitted that some of the claims in the Plough complaint came within the scope of the insurance coverage. Thus, on the basis of the Plough complaint, Commercial Union had a duty to defend IFF in the Plough action.

Whether it might ultimately be determined that a failure of timely notice of an occurence might relieve the insurer from indemnifying IFF from a recovery by Plough presented no basis for the insurer to refuse to defend the Plough lawsuit which clearly came within the scope of the policies' coverage. There were two obligations undertaken by the insurance company: the obligation to indemnify the assured against Plough's damages and the separate duty to defend a lawsuit covered by the policies.

■ An insurer's obligation to defend is separate and distinct from its duty to indemnify; the insurer's duty to defend is broader than its obligation to indemnify the insured. *See Niagara County v. Utica Mutual Insurance Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538, 541 (4th Dept.1981).

■ The determination of whether the insurer was bound to defend the insured depended upon the allegations in the Plough complaint. *See Seaboard Surety Co. v. Gillette Co.,* 476 N.E.2d 272, 64 N.Y.2d 304, 486 N.Y.S.2d 873, (1984). The obligation to defend arises whenever a complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy; the duty to defend exists even if debatable theories are

advanced in the complaint. *See Niagara,* 439 N.Y.S.2d at 541; *Marine Midland Services Corp. v. Samuel Kosoff & Sons Inc.,* 60 A.D.2d 767, 400 N.Y.S.2d 959, 962 (4th Dept.1977). The insurer must defend where some of the claims or allegations of the complaint fall within coverage of the policy, even if others do not. *See New York Central Mutual Fire Insurance Co. v. Heidelmark,* 108 A.D.2d 1093, 485 N.Y. S.2d 661 (3rd Dept.1985); *Niagara,* 439 N.Y.S.2d at 541.

"So long as the claims . . ., may rationally be said to fall within the policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." *Schwamb v. Fireman's Insurance Co. of Newark,* 363 N.E.2d 356, 357, 41 N.Y.2d 947, 394 N.Y.S.2d 632, 633 (1977).

Because the Plough complaint "alleged, or at least, did not exclude, a basis for recovery for which the insurer would be liable, the insurer was obliged to defend the suit 'until it could confine the claim to a recovery that the policy did not cover.'" *Maryland Casualty Co. v. Pearson,* 194 F.2d 284, 287 (2d Cir.1952). CU did not establish that the insurance policies did not require it to indemnify IFF against liability for Plough claims until the jury verdict in this action in 1986 on the issue of timely notice; CU could not fail or refuse to defend IFF in the interim from the inception of the Plough action in 1979 until the jury verdict in 1986.[1]

Moreover, by unconditionally undertaking the defense of the Plough action from the outset on IFF's behalf, Commercial Union could not thereafter renege and withdraw its defense to Plough's damage claim. The colossal premiums paid for the insurance covered Commercial Union's obligation not to jettison the suit.

After being notified of the Plough action in March 1979, and with full knowledge of the allegations in the Plough complaint, Commercial Union unequivocally defended IFF for two months. The allegations in the Plough complaint amply alerted Commercial Union to the possibility that it might have a defense to coverage on the ground of late notice, as well as on intentional sale of a toxic product.

Commercial Union knew that the Plough complaint charged IFF with intentionally misrepresenting the safety of its fragrance at the time of Plough's purchases in 1975 and with prior knowledge of the fragrance's defective nature. It knew that consumers had complained to Plough of allergic skin reactions in 1976 and 1977; it knew that 6–MC was an ingredient of the fragrance sold and had been implicated as the cause; it knew that toxicity of 6–MC when used in suntan lotion had been confirmed in December 1977; and it knew that Plough had to destroy millions of units of its suntan product in those years. In addition, Commercial Union knew, before it assumed the defense of the Plough case, that it had not been notified of these occurrences. These facts, recited in the Plough complaint, gave Commercial Union ample knowledge in March 1979 to decide the issue of coverage under the insurance policies on any available ground, including timely notice of the occurrences.

Nonetheless, Commercial Union not only unconditionally assumed the defense of the Plough lawsuit, but it did not deny coverage for another 16 months thereafter. In July 1980, Commercial Union wrote a letter, and in November 1980 it instituted this suit for a declaratory judgment, denying liability for Plough's damages due to late notice of the 1976 and 1977 occurences. At those times, it knew no more than what the Plough complaint had told it in March 1979.[2] In fact, in Commercial Union's July 8, 1980 letter to IFF disclaiming coverage, Commercial Union specifically referred to the allegations in the Plough complaint as

---

**1.** In oral argument, Commercial Union's counsel stated that it was not until 1984 that Commercial Union had conclusively determined that it had a defense to coverage.

**2.** In addition, at oral argument, Commercial Union's counsel stated that there was clearly apparent a late notice problem in this case and that Commercial Union saw this right away.

showing that IFF had not complied with the notice provision.[3]

Commercial Union could not agree to defend IFF and take control of the defense, without investigation of a possible defense to coverage, and then, when it belatedly conceived that it might wish to assert untimely notice as a defense, undo its initial representation, abandon its defense and withdraw from the action. *See Salerno v. Western Casualty & Surety Co.,* 336 F.2d 14 (8th Cir.1964); *Ford Motor Co. v. Commissary Inc.,* 286 F.Supp. 229 (N.D.Ill. 1968); *Fairbanks Canning Co. v. London Guaranty & Accident Co.,* 154 Mo.App. 327, 133 S.W. 664 (1911).

> ... when [an insurer] takes possession [of a case], it is a decision on its part that the case does fall under the policy. [It cannot decide to] undertake the defense, then undo its decision and abandon the defense.... [I]t should not be permitted to dominate when it will, and at will cast aside the duty to defend that goes with the jurisdiction it has assumed. The assured and his rights are subject to its election; [the insured] should not be exposed to its fitful caprice. It is not a question of technical waiver or estoppel, but a matter of agreement.... *Sachs v. Maryland Casualty Co.,* 170 App.Div. 494, 496 156 N.Y.S. 419, 420 (2d Dept. 1915).

"When a party with knowledge or sufficient notice of his rights freely does what amounts to a recognition or adoption of a contract as existing, or acts in a manner inconsistent with a claim of repudiation, he assents to it and is equitably estopped from impeaching it, although it originally may have been void or voidable." *Alsam Holding Co. v. Consolidated Taxpayers Mutual Insurance Co.,* 167 Misc. 732, 4 N.Y. S.2d 498 (1938).

Commercial Union's conduct left IFF uncertain and insecure as to its rights under the policies. First, CU unconditionally assumed the defense of IFF. Two months later, Commercial Union began to equivocate; it informed IFF that it would only continue its defense subject to a reservation of its rights. This of course placed CU's attorneys in the position of representing conflicting interests—in position to find a basis for denying coverage and simultaneously acting in support of coverage. When IFF refused to accept a conditional divided loyalty defense, Commercial Union withdrew from the case. Commercial Union then did nothing; it waited another fourteen months while IFF was compelled to and did defend the Plough suit, at its own cost. It was only in July 1980 that for the first time, Commercial Union announced that it was actually disclaiming coverage and would not defend IFF.

By unconditionally defending IFF, then vacillating its position on the coverage issue, and finally delaying its decision to disclaim, CU breached its obligation to defend IFF. *See Long Island Insurance Co. v. Graziano,* 64 A.D.2d 944, 408 N.Y.S.2d 145 (2d Dept.1978).

Accordingly, IFF is entitled to a declaration from this Court that Commercial Union had an obligation to defend it in the Plough action and that CU wrongfully breached that obligation.

3. The letter of July 8, 1980 disclaiming coverage stated:

"We have noted the allegations in Plough's complaint to the effect that Plough advised IFF in the summer of 1976 of consumer complaints of skin irritation allegedly resulting from the use of Plough suntan products containing a coconut fragrance supplied to Plough by IFF. We have also noted Plough's allegations to the effect that, again in 1977, Plough brought the problem to IFF's attention. Under these circumstances, IFF's refusal to produce any of the documentation or information requested in our attorneys' letter to IFF of January 29, 1980, must be taken as a refusal to cooperate with Commercial Union in its investigation of the question of whether IFF has complied with the requirements of the insurance contract, Policy Provisions Part I, Condition 4. [the Notice Provision]."

The letter further stated that "In light of the above-noted circumstances and policy provision, and in view of IFF's failure to comply with Condition 4 of the Policy Provisions Part I, Commercial Union is adhering to its initial determination that there is no coverage here; and Commercial Union will not take over the defense of IFF or indemnify IFF in this matter."

## Coverage of Plough's Damages

■ The issue of Commercial Union's obligation to indemnify IFF for the amount paid in settlement of the Plough action is a more difficult one. Under New York law, compliance with a notice provision in an insurance policy is a condition of reimbursement from the insurer. *See Utica Mutual Insurance Co. v. Fireman's Fund Insurance Co.*, 748 F.2d 118 (2d Cir.1984). However, an insured's seeming failure to timely notify the insurer will be excused or explained by proof that the insured lacked knowledge of the occurrence or had a good faith belief of nonliability. *See Security Mutual Insurance Co. v. Acker-Fitzsimmons Corp.*, 293 N.E.2d 76, 78, 31 N.Y.2d 436, 440–41, 340 N.Y.S.2d 902, 905–06 (1972).

■ The evidence presented on whether IFF's failure to notify Commercial Union in September 1977, or shortly thereafter, was unreasonable and whether IFF had a good faith belief of nonliability was conflicting. Although there was some evidence submitted from which a jury could find that IFF had sufficient information about the Tropical Blend problem to reasonably anticipate that it might be sued, there was also substantial evidence presented which demonstrated that IFF executives had a good faith belief of nonliability and that lack of inquiry into the circumstances was sufficiently explained.

Economic factors strongly suggested that IFF had no motive to fail to give notice of a claim for which it had purchased insurance and paid over $600,000 in premiums. Its omission to notify CU of the rare, unforseen and scientifically unreported allergic skin reactions developed by a handful of users in 1976 and 1977 to 6–MC when used in a suntan lotion, given that no suit against a fragrance supplier by a manufacturer of a product had previously been mounted, was consistent with the good faith and reasonableness of its belief that no lawsuit against IFF might be expected.

The evidence was that the photoallergenicity of 6–MC was unforeseen, not reported in any literature, not detectable by existing methodologies, and only detected through the use of new tests and technology. IFF was notified of a maximum of 50 consumers who reported suntan reactions in the years 1976 and 1977 out of which only 10 cases were validated allergic reactions to the suntan lotion, although there were approximately 9–12 million units of the Tropical Blend lotion on the market. Moreover, the evidence showed that Plough did not suspend its dealings with IFF or stop buying its fragrance after the Tropical Blend problem surfaced and Plough never intimated that it had cause to or might sue IFF.

Under the circumstances peculiar to this kind of a culminated problem, an insurer was in no way affected by any delay in notice of the past events. The Plough action was a product liability case. The occurrences on which the action was based—the sale of IFF's fragrance containing 6–MC and its inclusion in the Tropical Blend lotion—took place in 1976 and 1977. By the summer of 1977, at Plough's request for reasons unrelated to any toxicity finding, IFF had reformulated its fragrance eliminating 6–MC as an ingredient and sales to Plough of the fragrance thereafter did not contain any 6–MC. It was not until months later in September or December 1977 that Plough's consultants first discovered, with the use of new testing and new technology, that 6–MC when used in sun conditions was a probable cause of some allergic skin reactions. The requirement of notice to the insurance carrier of covered occurrences, as applied to culminated risks, ought, as a matter of law, mean that a reasonable time within which notice is to be given the insurer is not exceeded if given when an action is actually brought on the terminated cause, subject of course to limitary doctrines.

In the circumstances of the set of unusual facts here present, contemporary notice was impossible since the cause of the allergic reaction of the suntan lotion was unknown and long after the damage was done and could not be repeated (6–MC was out of the lotion) a scientific discovery im-

plicated 6–MC. That discovery and an action of the Food and Drug Administration concerning use of 6–MC in sun lotions in response to a confirmed implication of the ingredient, generated the Plough lawsuit within three months and unquestionably CU obtained immediate notice thereof. Notice of the claim in 1979 when the Plough suit was filed was no different in effect than and equally as effective for the insurance company as notice in late 1977. Nothing changed prior to the lawsuit which could affect Commercial Union's or IFF's investigation of the unsolved occurrences which took place in 1976 and early 1977. There was no evidence which demonstrated that Commercial Union was prejudiced in any way or that IFF had anything to gain by notice of the claim furnished at the time the suit was filed.

Despite the complete lack of evidence to show any reason for earlier notice than that given to Commercial Union, and the inherent unfairness to IFF in being denied the benefit of the insurance for which it paid over $600,000 in premiums, this Court is constrained by the language of New York case law to adopt a mechanical view of the time elapsed that seemingly requires strict compliance with a technical reading of an insurance notice provision, even if the time elapsed is not material to the insurance company's interests. *See Security Mutual,* 340 N.Y.S.2d at 905, 293 N.E.2d at 78. That reading however does not appear in cases of this type of injury where a cause is unknown, disputed, investigated by scientists, only discovered by new methodology and unanticipated until long after the occurrences. Several states other than New York have recognized the unfairness of relieving an insurer from liability because of noncompliance with a notice provision and have required proof of prejudice before an insurer can successfully assert the defense of noncompliance. *See* 13A *Couch on Insurance 2d* § 49:330 at 494–95 & n. 15 (1982).

Although there was substantial evidence to demonstrate that IFF did not anticipate that it might be sued by Plough, there was also evidence from which the jury could, according to state doctrine, nonetheless retrospectively say that IFF failed to show that its compliance with the notice provision in the insurance policies was reasonable in time. Consequently, if the strict New York doctrine is imported into this case, the Court is reluctantly constrained to hold that the jury verdict denying IFF compensation for Plough's damages must be allowed to stand—fairly or unfairly. The purpose and expense of product insurance must thus be compromised until the state court finds by sharper analysis of the realities that prejudice to an insurer from a delay of notice must be shown in this class of cases.

Accordingly, the motions of IFF are granted in part, as follows:

1) the jury's verdict in so far as it pertains to the obligation of Commercial Union to defend IFF in the Plough suit is set aside; and

2) judgment N.O.V. thereon is granted to IFF directing that interlocutory judgment shall be entered herein in favor of IFF against Commercial Union declaring that Commercial Union was obligated under its insurance policies to defend IFF in the Plough action against IFF; and

3) a new trial by jury be and hereby is ordered to determine IFF's reasonable costs, attorney's fees and expenses in connection with the defense of the Plough action, and in connection with this action, *see Johnson v. General Mutual Insurance Co.,* 246 N.E.2d 713, 714, 24 N.Y.2d 42, 298 N.Y.S.2d 937, 939 (1969); *Government Employees Insurance Co. v. DiCrisci,* 70 A.D.2d 628, 416 N.Y.S.2d 639, 640 (2d Dept.1979), plus interest;

4) in the event that the interlocutory judgment notwithstanding the verdict is hereafter vacated or reversed, the motion for a new trial, on the issue of Commercial Union's obligation to defend IFF in the Plough action, is hereby granted on the ground that the jury's verdict denying IFF reimbursement for its defense

costs was clearly against the weight of the credible evidence; and

5) the issue to be tried is placed on the Court's calendar of ready cases for trial 30 days from the date hereof.

Except as so granted, the motions of IFF are denied.

SO ORDERED.