**DRAFT SYSTEMS, INC. Appellee,**

v.

**David E. ALSPACH, Trustee in Bankruptcy for Rimar Manufacturing, Inc., and Insurance Company of North America, and New Hampshire Insurance Company, and Continental Insurance Company,**

**Appeal of CONTINENTAL INSURANCE COMPANY.**

**No. 84–1356.**

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1985.

Decided March 4, 1985.

Rehearing Denied March 28, 1985.

---

Glenn C. Equi (argued), David P. Nelson, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for appellant.

Hyman Lovitz (argued), Hyman Lovitz & Associates, Philadelphia, Pa., for appellee.

Before ADAMS and WEIS, Circuit Judges, and HARRIS, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this case, the district court held that an insurance company which furnished a defense to a putative insured was estopped to assert lack of coverage even though the parties had executed a non-waiver agreement. Finding that conclusion inconsistent with applicable state law, we will vacate and remand for further proceedings.

After a bench trial, the court issued a declaratory judgment that the Continental Insurance Company was liable for a judgment that had been entered against the Rimar Manufacturing Company in an earlier but related suit. The court also determined that the Insurance Company of North America and the New Hampshire Insurance Company did not have underlying policies in force that would have covered Rimar's deductible under the Continental excess policies. Accordingly, judgment was entered in their favor. Only Continental Insurance Company has appealed, and plaintiff does not contest the findings in favor of the other carriers.

This insurance coverage dispute arises out of a products liability claim brought by Draft Systems against Rimar Manufacturing. On December 19, 1975, Draft Systems shipped to its customers beer dispensers containing an unsuitable grade of nylon tubing manufactured and supplied by Rimar. In the months that followed the shipment, the defective product caused beer to sour in the kegs, resulting in substantial losses to Draft Systems. To recover its damages, Draft Systems sued Rimar in the District Court for Eastern Pennsylvania.

* The Honorable Oren Harris, United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

Before Draft Systems commenced the products liability case, Rimar had filed a petition in bankruptcy under Chapter 11. Draft Systems secured relief from the automatic stay so that the damage suit could go forward and determine liability for claims covered by Rimar's liability insurance, if any. After the Insurance Company of North America and the New Hampshire Insurance Company both denied the existence of valid policies, Rimar's trustee in bankruptcy executed a non-waiver agreement with the Continental Insurance Company. The agreement provided that Continental, without prejudice to its rights, would furnish a defense even though it denied any obligation to indemnify Rimar. At Continental's request, Louis Bricklin, Esquire, of Bennett, Bricklin, Saltzburg & Fullem, took over the defense of Rimar.

Before trial of the damage suit, Draft Systems filed the present declaratory judgment action against Rimar's trustee and the three insurance companies to resolve the coverage issues. The matter was held in abeyance awaiting the outcome of the tort suit.

Draft Systems eventually recovered a judgment against Rimar for $409,184.16. On appeal to this court, we affirmed on liability, but because of errors in the damage phase of the case, remanded for further proceedings. We explained our reasoning in an unpublished per curiam opinion.[1]

After the case was returned to the district court, counsel for Rimar and Draft Systems resolved their differences regarding the amount of damages without trial. Rimar's counsel, Mr. Bricklin, submitted an offer of judgment of $200,000, which was accepted by Draft Systems and entered in the district court.

Instead of proceeding through execution and garnishment on the judgment, Draft Systems elected to pursue this declaratory judgment action. In due course the court

scheduled a bench trial and after its conclusion filed an opinion. Because no issue has been raised on appeal as to the policies of the Insurance Company of North America and New Hampshire Insurance Company, no reference need be made to the findings on their lack of coverage.

The district court found that Continental issued an excess policy with a $300,000 deductible on October 30, 1975. On January 15, 1976, Rimar requested that the policy be canceled and a new one with a $100,000 deductible be issued. The court noted some doubt as to "which, if either, Continental Insurance policy was outstanding as of the date of the occurrence, February 19, 1976." Rather than answering that question, the court resolved the case by holding that Continental was bound by the settlement with Draft Systems, "regardless of its reservation of rights." In the court's view "when its counsel settled the matter with the plaintiff [Draft Systems], it was acting not only in Rimar's interest, but it was acting in Continental's interest, even though counsel was retained by Continental to defend the Rimar action under a reservation of rights."

The court based its conclusion on the premise that when an insurer undertakes a defense of its insured, the right to deny coverage is waived. In denying Continental's motion for a new trial, the court wrote, "The nonwaiver agreement is a legal nullity in that its terms are contrary to case law governing the subject."

On appeal, Continental raises a number of issues. It contends that neither of its policies was in effect at the pertinent time, that the district court erred in fixing the date of occurrence, and that the court failed to recognize the deductible feature of the policies. Continental's principal argument, however, is that its non-waiver agreement was valid and should have been honored.

**1.** The opinion of the district court is reported at 524 F.Supp. 1049 (E.D.Pa.1981). Our action on appeal is reported in the table at 688 F.2d 820 (3d Cir.1982), as "affirmed." Because this designation is misleading and may cause misinterpretation of the damage rulings, we have annexed our previously unpublished opinion as Appendix A.

■ The district court observed that under Pennsylvania law, when an insurer voluntarily manages, the insured's defense to final judgment or settlement, the carrier cannot later disclaim liability under the policy. *Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952); *Lewis v. Fidelity & Casualty Co.*, 304 Pa. 503, 156 A. 73 (1931). However, that general proposition does not apply when coverage defenses are disclosed and specifically preserved.

In many instances, the validity of policy defenses requires protracted investigation. J. APPLEMAN, INSURANCE LAW & PRACTICE § 4682 (1979); Note, Insurer's Duty To Defend Under A Liability Insurance Policy, 114 U.PA.L.REV. 734 (1966). If coverage is not determined at the time the claimant files suit, both the insured and the carrier are at a disadvantage. If the insurance company fails to provide a defense, the claimant may enter a default judgment against the insured. If, however, the company affords representation without some understanding with the insured, the carrier may later be estopped to assert an otherwise valid coverage defense. *See* APPLEMAN, §§ 4689 & 4694. From the insured's standpoint, the prospect of a default judgment is unacceptable, as is the perhaps unnecessary expense of retaining competent counsel on short notice.

To accommodate the concerns of both the insured and the carrier, the practice of using a non-waiver agreement has developed. *See* APPLEMAN, § 4689; M. RHODES, COUCH ON INSURANCE § 51:88 (1982). Through this device, the carrier informs the insured of various factors which cast doubt on coverage, reserves the right to assert those matters at a later date, but agrees to provide a defense in the interim. This practice not only serves the interests of the parties to the insurance policy but is helpful to claimants and the courts as well because the claimant's tort litigation may proceed expeditiously. Indeed, in most instances, the coverage issues are amicably resolved along with the tort claims. It is unlikely that such settlements would be reached if the carrier could not reserve its right to ultimately disclaim liability.

The courts have recognized the usefulness of non-waiver agreements.

"Such an agreement is proper and effective. . . .

\*　　\*　　\*　　\*　　\*　　\*

When, therefore, such an agreement between the insured and the insurer is entered into as in the present case, the insurer does not, by defending the original suit, waive any rights or become estopped to repudiate liability in a subsequent action on the policy brought by the injured person."

*LaRoche v. Farm Bureau Mut. Auto. Ins. Co.*, 335 Pa. 478, 484, 7 A.2d 361, 363–64 (1939). "The insurance company may defend the action with the express understanding that it is not admitting coverage by so doing." *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 58 n. 3, 188 A.2d 320, 322 n. 3 (1963). *See also State Farm Mut. Auto. Ins. Co. v. Coughran*, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970 (1938); *Speier v. Ayling*, 158 Pa.Super. 404, 45 A.2d 385 (1946).

■ We have held, "There can be no doubt that the reservation of rights and defenses under the non-waiver agreement was valid and effective under the law of Pennsylvania." *Meerdink v. Ott*, 307 F.2d 721 (3d Cir.1962).[2] It follows, therefore, that the non-waiver agreement in this case may not be disregarded.[3]

■ In the district court, the parties stipulated that "a settlement by way of an offer for judgment was submitted ... by

---

**2.** In some cases the carrier provides a defense after sending the insured a letter preserving its position on disputed policy issues. These "reservation of rights" letters do not require the assent of the insured but are given the same effect as a non-waiver agreement. *See Brugnoli*

*v. United National Ins. Co.*, 284 Pa.Super. 511, 426 A.2d 164 (1981).

**3.** We reject the plaintiff's contention that the trustee in bankruptcy was not the proper party to sign the non-waiver agreement on behalf of Rimar.

Louis Bricklin, Esquire, on behalf of Rimar Manufacturing, Inc. and that a judgment of record was entered on August 26, 1983 in the amount of $200,000 in favor of Draft Systems, Inc. against Rimar Manufacturing, Inc." Nothing in that stipulation establishes that Continental consented to the settlement or agreed to pay it. It is undisputed that after the non-waiver agreement was signed, Continental requested Mr. Bricklin to provide the defense for Rimar during the trial and appeal of the Draft Systems' case. That arrangement, however, is consistent with the terms of the non-waiver agreement and does not support the finding that the offer of judgment against Rimar was made with the understanding that it would be paid by Continental.

Although Continental stood to benefit from the reduction of damages from $409,-184.16 to $200,000, that fact does not establish that Continental was waiving its policy defenses. The judgment on its face simply liquidated the Draft Systems claim against Rimar. Consequently, the district court's finding that Continental was bound by the settlement is based on an error of law with respect to the non-waiver agreement as well as on a clearly erroneous factual finding implying that the carrier had agreed to pay the judgment.[4]

This case, therefore, must be remanded to the district court for further proceedings to determine whether Continental's first policy was in effect at the time of the occurrence. If so, the deductible amount is in excess of the judgment, and therefore no recovery is available under that policy. It will also be necessary to make findings as to the second policy with the deductible limit of $100,000. Continental contends that this policy was never issued because it was dependent on payment of premiums in advance—a prerequisite Rimar did not satisfy.

The district court observed that the date of occurrence was fixed when the defective tubing caused damage to purchasers. The mere receipt of the defective tubing by Draft Systems was properly rejected as the pertinent time, given the policy terms. *See Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56 (3d Cir.1982); *Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir.1981). Although the court focused on the proper event, two dates were given, February 12 and 19. This factual difference should be resolved.

Accordingly, this case will be remanded to the district court for further proceedings consistent with this opinion.

## APPENDIX A

### UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 81-2870

DRAFT SYSTEMS, INC., Appellee

v.

RIMAR MANUFACTURING, INC., Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C.Civ. No. 77-2557)

Argued June 7, 1982

---

4. The district court noted that if the deductible is $300,000, Continental's initial liability would have been for $109,184.16 on the first judgment. If the second policy with a $100,000 deductible were valid, the insurer's liability would have been $309,184.16. Our per curiam opinion reveals that the first judgment was excessive, and therefore at the time Mr. Bricklin made the offer of judgment, the parties were aware that the total damages which Draft Systems could recover would be substantially less than the amount awarded in the first trial. Consequently, it seems unlikely that in view of its deductible, Continental would have felt that a $200,000 settlement would have been reasonable from its standpoint.

Before: ADAMS and WEIS, Circuit Judges, and BLOCH,* District Judge

Opinion Filed July 22, 1982

Louis E. Bricklin, Esq. (ARGUED), Bennet, Bricklin, Saltzburg, & Fullem, 1800 IVB Building, 17000 Market Street, Philadelphia, PA 19103, Attorneys for Appellant.

Hyman Lovitz, Esq. (ARGUED), Hyman Lovitz & Associates, 2535 PSFS Building, 12 South Twelfth Street, Philadelphia, PA 19107, Attorneys for Appellee.

## OPINION OF THE COURT

PER CURIAM.

This appeal is from the district court's entry of judgment on a jury verdict in favor of the plaintiff. The jury awarded a total of $409,184.16 for damages caused by the defendant's conceded breach of warranty. The district court denied the defendant's post-trial motions, holding that the circumstances entitled the plaintiff to consequential, as well as direct, damages. Although we agree that there is evidence to support consequential damages, some of the items awarded are not allowable under applicable Pennsylvania law. We therefore remand for a new trial on damages only.

The plaintiff manufactures a type of dispensing unit used in beer kegs. One of the components is nylon tubing purchased from the defendant. Although the plaintiff ordered tubing made from a material known in the trade as Nylon 11, the defendant furnished Nylon 6, which is identical in appearance but has a higher liquid absorption rate. The plaintiff's unknowing use of Nylon 6 in its unit resulted in malfunctions, expense for repairs, and claims for breach of warranty by its customer.

The jury's special findings allowed the following claims made by the plaintiff:

| | |
|---|---|
| Cost of Tubing | $ 4,565.24 |
| Shipping Cost | 188.25 |
| Product Spoilage (Beer) | 14,369.11 |
| Direct Labor & Materials | 60,306.67 |
| Supplies | 9.00 |
| Auto & Truck Charges | $ 569.32 |
| Employee Salaries (in travel status) | 1,302.95 |
| Motel & Travel Charges | 2,645.60 |
| Freight In | 3,925.64 |
| Freight Out | 7,384.80 |
| Technical Analysis (Truesdail) | 485.00 |
| Technical Analysis (Stewart) | 345.00 |
| Manufacturing Costs | 96,692.53 |
| Bank Interest Charges | 120,420.05 |
| Loss of Profits | 95,975.00 |

The last three items are the principal sources of disagreement on this appeal.

The loss of profits claim was for an amount representing the difference between the plaintiff's net operating loss in 1975, the year before the breach of warranty, and 1976, when the effects of the breach became apparent. In 1975, the plaintiff had a loss of $149,746, and in 1976, the loss was $245,721. The difference between the two is $95,975—the amount the plaintiff submitted to the jury and it accepted as lost profits.

The parties agree that under Pennsylvania law there may be no recovery for loss of customer good will. *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968). *See also, Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1225–27 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The plaintiff asserts that the $95,975 loss resulted from its failure to realize profits on expected sales, and not customer dissatisfaction. While testimony was presented that suggests that plaintiff's loss of profits was due to the diversion of its resources away from the development of a new product to the repair of the damaged beer kegs, the plaintiff produced no evidence of any specific instances when sales were lost, however, other than to show that one customer delayed placing an order for ten months. This hesitancy was caused by the customer's desire to see how the plaintiff would handle the problems caused by the dispensing unit's malfunction. As the plaintiff's witness testified, the company's reputation in the industry was questionable after the failure

---

* The Honorable Alan Bloch, United States District Judge for the Western District of Pennsylvania, sitting by designation.

of its product became known. To the extent that the plaintiff's claim on this record is based on loss of reputation and customer good will, it cannot be compensated under Pennsylvania law.

Moreover, the plaintiff's method of calculating lost profits results in a duplication of damages. If the amounts which the jury awarded for such items as manufacturing cost, product spoilage, travel expenses, etc., are added to the plaintiff's balance sheet for 1976 when the expenses were incurred, the operating loss for that year would correspondingly be diminished. Indeed, compensation for those items results in an operating loss for 1976 that is less than that for 1975. Thus, even by plaintiff's own method of calculation, there would be no loss of profits in 1976. Since the plaintiff did not present competent proof of lost profits, that item of damages should not have been awarded.

The claim for bank interest charges was based on the contention that the defendant's breach of warranty brought the plaintiff so close to ruin that it was required to obtain outside financing to remain viable. A loan was secured in 1977 and the interest paid amounted to $120,420.05. Defendant objected to the introduction of testimony on this claim because the plaintiff first raised it on the day before trial. The district court permitted the testimony, even though the plaintiff did not list interest charges as an item of damage in pretrial orders filed in 1978 and 1979, nor in 1980, when counsel for both parties agreed that no further pretrial orders were necessary. Moreover, in December 1977, the plaintiff did not include interest charges in its response to interrogatories requesting a detailed list of damages.

In *Price v. Inland Oil Co.*, 646 F.2d 90, 95 (3d Cir.1981), we emphasized that pretrial orders will ordinarily limit the scope of a trial. *See* FED.R.CIV.P. 16. The district court thought *Price* applies only to shifts in the theory of liability, but the rationale of avoiding unfair surprise applies equally well to damages. *Id.* at 96. The last minute assertion of a claim for more than $120,000 vividly exemplifies the tactics the pretrial rule is meant to eliminate. Under these circumstances, the trial judge should have refused to allow the claim or, in the alternative, ordered a continuance *sua sponte.*

In view of the unusual circumstances in this case, we suggest that, on remand, the district court schedule a pretrial conference. At that time, the trial judge should determine whether the claim for interest will be barred, or whether the plaintiff will be permitted to offer evidence on the matter after the defendant has been granted an opportunity for discovery.

Another reason to disallow the award for interest expenditures here is insufficiency of evidence. The record does not show that the defendant "had reason to know" that a misshipment of tubing could push the plaintiff to the edge of financial disaster and require it to go outside its own corporate financial structure in order to proceed with its business. U.C.C. § 2–715(2)(a), codified at 13 PA.CONS.STAT. ANN. § 2715(b)(1) (Purdon Supp.1982), requires such proof as a prerequisite for obtaining consequential damages. *See generally, R.I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 378 A.2d 288 (Pa.1977). If the district judge does permit the plaintiff to raise the interest claim at retrial, and the plaintiff is unable to produce evidence beyond that in the present record to bring the claim within the scope of § 2–715(2)(a), then it must be disallowed as a matter of law.

The plaintiff's calculation of its manufacturing costs improperly included an amount for overhead expenses. Overhead is a proper item of damages only when additional operating time is required to remedy the breach. *Royal Pioneer Paper Box Mfg. Co. v. Louis DeJonge & Co.*, 179 Pa.Super. 155, 115 A.2d 837 (1955). Here, the award cannot stand because the plaintiff failed to produce any evidence that it incurred additional overhead costs.

Finally, the defendant complains that the plaintiff's witness on damages introduced summaries of expenses prepared from

records that remained at the company's offices in California during the trial. The use of summaries is a valid procedure for expediting trials. However, the adversary should be given the opportunity, preferably at pretrial and also perhaps during the trial, to examine the supporting documents. FED.R.EVID. 1006. In this case, the trial judge permitted the use of summaries for virtually all of the plaintiff's damage claims because he believed the defense had declined the opportunity to review the underlying material in California.

The record is not clear as to what documents were furnished to the defense and what opportunity it had to examine the relevant material at the plaintiff's offices. The matter is complicated by the fact that the trial judge was assigned to the case shortly before trial and after discovery was completed. In addition, the trial lawyer for the defendant was not original counsel in the case.

In view of these uncertainties, and since the case must be remanded in any event, we believe that this matter also should be reviewed by the district court at the pretrial conference. At that conference, we believe, it would be helpful to review all of the items of damage in detail. It appears to us that many of the matters are likely candidates for stipulation and that proof of others may be drastically shortened by the exercise of reasonableness on the part of the litigants.

Accordingly, a new trial will be granted, limited to the determination of the proper items of direct and consequential damages. The rulings as to liability and the propriety of recovering direct and consequential damages will be affirmed.