BECKWITH MACHINERY
COMPANY, Plaintiff,

v.

TRAVELERS INDEMNITY
COMPANY, Defendant.

Civ. No. 83–974.

United States District Court,
W.D. Pennsylvania.

July 11, 1986.

Charles Weiss, Richard M. Zomnir, Pittsburgh, Pa., for plaintiff.

William K. Herrington, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

Presently before us are the Plaintiff's and Defendant's Motions for Summary Judgment. Beckwith Machinery Company ("Beckwith") filed the instant action against Travelers Indemnity Company ("Travelers") alleging a breach of contract when Travelers withdrew its defense of Beckwith in an underlying lawsuit brought by Trumbull Corporation ("Trumbull") against Beckwith and Caterpillar Tractor Company ("Caterpillar"). The issues presented by the cross-motions are: 1) whether the damages by Trumbull were covered by the insurance policy; and 2) whether Travelers, as insurer, had a duty to defend Beckwith, as insured, in the prior Trumbull litigation. For the reasons which follow, we will grant summary judgment in favor of Beckwith.

## FACTS

The parties have stipulated to many of the salient facts. Stipulation of Facts, Dkt. No. 48.

Plaintiff, Beckwith, is a Delaware corporation with its principal place of business in Murrysville, Pennsylvania. Complaint, ¶ 1. Beckwith is in the business of selling, leasing and repairing Caterpillar earthmoving equipment. *Id.*, ¶ 6; Stipulation of Facts, ¶ 2. Defendant, Travelers, is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Complaint ¶ 2.

Travelers contracted with Beckwith to provide Beckwith with comprehensive general liability insurance pursuant to manuscript insurance policy number TR–NSL–103T891–6–74, which is the controlling policy in this dispute. *Id.*, ¶ 4; Stipulation of Facts, ¶ 1. Travelers agreed to pay all sums which Beckwith became obligated to pay by reason of liability imposed by law, or assumed by Beckwith under any contract, "for damages because of bodily injury, personal injury or property damage to which the policy applied." Complaint, ¶ 4. Further, the policy provided that Travelers "agreed to defend any suit brought against Plaintiff within the United States, even if any of the allegations of the suit were groundless, if said suit alleged bodily injury, personal injury or property damage." *Id.*, ¶ 5.

In 1973, Beckwith recommended, and eventually sold, various Caterpillar tractor scrapers and earthmoving equipment to Trumbull, which utilized some of this equipment at a construction job site in the southern part of Florida. Stipulation of Facts, ¶ 2. This project, which began on or around March 1, 1974, required Trumbull to excavate a reservoir and build a "soil cement" (a mixture of sand and cement) dike to hold water to be used for cooling a power plant, and other related construction. Beckwith's Brief In Support of Motion for Summary Judgment at p. 2; Beckwith's Appendix PX 61.

However, as early as April, 1975, the tractor scrapers supplied by Beckwith broke down from time to time due to engine and transmission problems; thus, hampering the progress of Trumbull's Florida construction project. Consequently, warranty, maintenance and other repairs were performed on the tractor scrapers by a local Caterpillar dealer as well as by representatives of Caterpillar and Beckwith. Stipulation of Facts, ¶ 4. Counsel for Trumbull formally notified Beckwith by a letter dated September 27, 1976 of its claim that the Caterpillar tractor scrapers were defective and that their failure to perform caused Trumbull to suffer damages in excess of three million dollars ($3,000,000.00). *Id.*, ¶ 5, Beckwith's Appendix PX 71.

On March 17, 1976, prior to Trumbull's written notification to Beckwith that it intended to file a claim, Beckwith had informed Johnson & Higgins, its insurance broker, which then informed Travelers, of

the possibility of a claim by Trumbull. Stipulation of Facts, ¶ 6.

On or about April 15, 1977, Trumbull initiated a lawsuit against Beckwith and Caterpillar in the Court of Common Pleas of Allegheny County, GD 76–22608 (hereinafter the "Trumbull" case). The Trumbull case included claims against Beckwith for breach of warranties and misrepresentation of quality (i.e., failure to inform Trumbull of design defects) in thirteen (13) earthmoving tractor scrapers that were manufactured by Caterpillar and sold or rented to Trumbull by Beckwith. Complaint, ¶ 7.

In its complaint, Trumbull alleged *inter alia* that it incurred substantial damages caused by the allegedly defective Caterpillar 651 and 657 tractor scrapers, which included excessive down time, a decrease in their market value and substantial damages in the performance of certain contractual obligations of Trumbull, including, but not limited to, increased project costs for labor, increased machinery down time, impact costs and overall job extension and costs. Complaint, ¶ 9.

Travelers, through the law firm of Stein & Winters, assumed the defense of the Trumbull case from the initiation of the lawsuit with respect to all claims except those pertaining to punitive damages. *Id.*, ¶ 10. Based on Stein & Winters' advice that punitive damages might not be covered under the insurance policy, Travelers notified Beckwith in a letter dated June 9, 1977 that it would not provide coverage for the punitive damages claimed by Trumbull and suggested that Beckwith engage counsel to pursue that aspect of its case. Stipulation of Facts, ¶ 9. At the time, Travelers did not advise Beckwith that any other claims made by Trumbull might not be covered or defended. Thereafter, in response to Travelers' refusal to provide a defense for the claim for punitive damages, Beckwith retained the law firm of Thorp, Reed and Armstrong, which notified Travelers that Beckwith was holding Travelers responsible for coverage and defense of Trumbull's punitive damages claim. *Id.*, ¶ 10.

The parties have stipulated that the Trumbull Complaint stated claims of property damage which were potentially within the coverage afforded by the policy. *Id.*, ¶¶ 13–14. In fact, in its "Claim Experience Review Form" dated September 20, 1977, Travelers stated that the Trumbull Complaint included:

> Multiple allegations against our insured re sale of equipment to contractor for Florida project. Complaint contains many areas of covered and noncovered counts. We will have to get into discovery before we will be in a position to make a final determination.

*Id.*, ¶ 15. Moreover, in an internal memorandum authored by Associate Manager Charles E. Michaux, and dated April 10, 1978, Travelers noted the possibility that Beckwith, as a joint tortfeasor, could be liable for as much as 50% of the Trumbull claims. Stipulation of Facts, ¶ 21; Beckwith's Appendix PX 5. Referring to an opinion from outside counsel, Mr. Michaux stated his belief that Travelers was estopped from withdrawing its defense and coverage at this point. *Id.* Several other internal memoranda and/or letters were circulated among Travelers' personnel, which reflected the insurer's vacillation and confusion over potential coverage of the Trumbull claims. Beckwith's Appendix PX 3, 6, 9, 11.

Despite the existing differences among Travelers' employees over what course of action to take regarding the Trumbull claims, by letter dated May 19, 1978, thirteen months after the initiation of the Trumbull lawsuit and Travelers' defense of Beckwith for all compensatory damage claims, Travelers suddenly denied coverage and withdrew its defense of Beckwith. Complaint, ¶ 11. In its letter to Beckwith, Travelers stated that it "can no longer afford you defense for any of the causes of action sued upon." Stipulation of Facts, ¶ 17.

Subsequent to its denial of a defense on the Trumbull claims, Travelers pondered drafting a reservation of rights letter or filing a declaratory action to resolve the

coverage issue. Beckwith's Appendix PX 9, 11. In a memorandum dated July 14, 1978 Travelers' Regional Assistant, James R. Murphy, acknowledged that the "initial investigation was lacking and we must now pick up the ball and put this file in a good defense posture." Beckwith's Appendix PX 9; Deposition of James R. Murphy at 79–80. At one point, Travelers proposed to resume the defense of the Trumbull case without providing coverage, if Beckwith, in turn, would waive its claim of "prejudice" against Travelers. Beckwith's Appendix PX 5, 19. Beckwith rejected this offer, believing it was owed both defense and coverage. *Id.*, PX 14.

On July 24, 1978, Thorp, Reed and Armstrong notified Travelers that Beckwith had instructed them to take over the entire defense of the Trumbull case. Stipulation of Facts, ¶ 17. Subsequently, in October of 1978, Stein & Winters petitioned and received leave of this Court to withdraw as Beckwith's counsel. *Id.*, ¶ 18. Moreover, Travelers was put on notice that Beckwith intended to proceed against Travelers for all costs and expenses it incurred in the defense of the Trumbull lawsuit. *Id.*, ¶ 20.

The record discloses that after continued discovery and defense by Beckwith's counsel, the Trumbull case was eventually settled on November 12, 1982, with Beckwith's portion of the settlement payment to Trumbull being $100,000.00. *Id.*, ¶ 22. The instant lawsuit followed.

Count One of Beckwith's Complaint alleges that Travelers breached the terms of the manuscript insurance policy by withdrawing its defense of Beckwith and also by refusing to defend the punitive damages claims. Complaint, ¶¶ 14–15. Count Two alleges that Travelers refused to participate in settlement discussions with Trumbull and breached the terms of the policy by not paying the $100,000.00 to Trumbull since said payment was tendered for damages allegedly covered by the insurance policy. *Id.*, ¶¶ 16–20. Count Three, which is based on an estoppel theory, alleges that Travelers assumed the complete defense of all compensatory damage claims of Trumbull for over one year, which prevented Beckwith from discovering witnesses, documents and facts relevant to its defense for that time period, and that Beckwith relied on Travelers to defend those claims for the entire duration of the Trumbull case and to pay any damage claims or settlements. *Id.*, ¶¶ 21–24. The damages which Plaintiff seeks to recover on Counts 1–3 include the $100,000.00 which it paid to settle the Trumbull case plus the costs, expenses and attorneys' fees related to the Trumbull case. Count Four of Plaintiff's complaint, which sought punitive damages for Travelers' alleged bad faith withdrawal of its defense and refusal to settle, was dismissed by a Memorandum Order of this Court dated September 21, 1983.

In its motion for summary judgment, Beckwith requests this Court to enter judgment against Travelers for the attorneys' fees and costs of defending the Trumbull case, for the $100,000.00 paid by Beckwith in settlement of that case and for attorneys' fees and costs related to the instant litigation. Beckwith contends that Travelers breached its contractual obligations under the insurance policy issued to Beckwith by failing to indemnify and defend the Trumbull claims, which were covered under Travelers' policy. Alternatively, Beckwith claims that even if the Trumbull claims were not covered under the policy, Travelers is responsible and liable for coverage and defense under the doctrine of estoppel.

Travelers, in its motion for summary judgment, argues that it did not breach any contractual obligations under the insurance policy issued to Beckwith, nor is it liable for coverage and defense of the claims made by Trumbull under any legal theory. Further, Travelers asserts that Beckwith was not prejudiced by any act or omission of Travelers, that Travelers did not act in bad faith and that Travelers is not liable for attorneys' fees and costs incurred by Beckwith.

*Summary Judgment*

When considering a Motion for Summary Judgment, the court must evaluate the evidence as presented by the pleadings, depo-

sitions, answers to interrogatories, admissions and affidavits submitted and determine whether, when viewed in the light most favorable to the nonmoving party, there are material facts in dispute. Fed.R. Civ.P. 56; *Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747, 751 (3d Cir.1977). The moving party bears the burden of proving that no genuine issues of fact exist. *Butz v. Hertz Corp.*, 554 F.Supp. 1178, 1181 (W.D.Pa.1983). However, the party opposing summary judgment must not rest upon the mere allegations of its pleadings. If the responding party does not reply to the motion with specific facts showing the existence of a genuine issue for trial, summary judgment, where appropriate, will be granted against it. Fed.R.Civ.P. 56(e); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). Any doubts must be resolved in favor of the nonmoving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

*Discussion*

### I. *Choice of Law*

This Court has diversity jurisdiction over the subject matter of this action. 28 U.S.C. § 1332 (1982). Applying Pennsylvania choice of law rules, it is clear that Pennsylvania substantive law must be applied to the present controversy. *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.*, 752 F.2d 71, 74 (3d Cir.1985).

### II. *Coverage*

The portion of the manuscript policy upon which Beckwith relies for coverage is as follows:

I. Coverage. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed by law upon the insured, or assumed by the insured under any contract, for damages because of bodily injury, personal injury, malpractice injury, advertising injury or property damage to which this policy applies.

The policy goes on to define property damage as:

"property damage" means (a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

In addition, the policy describes Travelers' duty to defend as follows:

II. Defense, Supplementary Payments, With respect to any claim or suit alleging bodily injury, personal injury, malpractice injury, advertising injury or property damage, the company shall have right and duty to:

A. defend any suit against the insured ... alleging such injury or damage and seeking damages on account thereof, even if any of the allegations of the suit are groundless, false or fraudulent, and the company may make such investigation, negotiation and settlement of any such suit defended by the company as it deems expedient, but the company shall not be obligated to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgements or settlements....

In its original denial letter of May 19, 1978, Travelers relied *solely* on the basis of exclusion (f)(3) which provides in pertinent part:

Exclusions.

This policy does not apply:

.    .    .    .    .

(f) to property damage to

.    .    .    .    .

(3) the named insured's products arising out of such products or any part thereof....

Subsequently, as an additional basis for its denial of liability, and in support of its position in the present cross-motions for summary judgment, Travelers also relies on exclusion (j)(2) which excludes coverage:

(j) to loss of use of tangible property which has not been physically injured or destroyed resulting from

.    .    .    .    .

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan specifications, advertising material or printed instructions prepared or developed by any insured....

Moreover, Travelers contends that Beckwith breached the notice provision of the policy since it knew of Trumbull's difficulties with the Caterpillar tractor scrapers as early as 1974, but did not report them as occurrences and/or claims for damages until March 17, 1976. Regarding this point, the policy provides as follows:

3. Insured's Duties in the Event of Occurrence, Claim or Suit.

a. In the event of an occurrence resulting in bodily injury or property damage ... written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. Notice shall be deemed given as soon as practicable, as respects the named insured, if given within thirty days after the Insurance Manager of the named insured becomes aware of such occurrence or offense.

Travelers contends that Beckwith's breach of the above provision bars its claims for damages under the policy. Answer, ¶ 42.

■ At the outset, we note that the burden of proving an exclusion from coverage is on the insurer and all ambiguities must be resolved in favor of coverage. *C.H. Heist Caribe Corp. v. American Home*

*Assurance Co.*, 640 F.2d 479 (3d Cir.1981). "If the words of an insurance policy are clear and unambiguous, they are to be given their plain and ordinary meaning ... [a] court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982) (citation omitted). In the instant case, we find the policy provisions at issue to be clear and unambiguous; therefore interpretation of the policy language is a matter of law for the court. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). We also note that there is no ambiguity created by Travelers' internal memoranda since these documents indicate at most that some Travelers' personnel have conflicting opinions on the issue of coverage. *See Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 220 (3d Cir.1986) (internal memoranda of insurer do not create ambiguity in clear and unambiguous language).

The parties have extensively argued and briefed the issue of coverage and the above exclusions. As to exclusion (f)(3), we note that while some of the property damage in the present case was to "the named insured's products" (*i.e.*, the Caterpillar tractor scrapers), the parties stipulated that the Trumbull complaint stated claims potentially within coverage. Stipulation of Facts, ¶ 14. This conclusion is buttressed by the Trumbull complaint, various internal memoranda of Travelers' employees as well as by the expert report prepared in the Trumbull case, the Hill Report, dated April, 1980, which computed the amount of damages, of which the majority are damages other than to the Caterpillar tractor scrapers as being in excess of $11,000,000.00. Beckwith's Appendix PX 61. Specifically, the damages listed in the Hill Report included the rental of substitute tractor scrapers, repair of damages to the dike being constructed by Trumbull, loss of use of equipment, extended dewatering costs to repair damage to the reservoir and other damages. *Id.* We find that at a minimum,

the physical damage to the dike and reservoir plus the loss of use of equipment constituted property damage which was potentially covered by the policy. *Cf. Pittsburgh Bridge & Iron Works v. Liability Mutual Insurance Co.*, 444 F.2d 1286, 1290 (3d Cir.1971) (damage to tramway containing insured's defective saddle not within exclusionary provision); *Bowman Steel Corp. v. Lumbermen's Mutual Casualty Co.*, 364 F.2d 246, 249 (3d Cir.1966) (diminution in market value of building to which defective siding containing asbestos was attached constitutes covered property damages under products hazard clause); *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co.*, 281 F.2d 538, 541 (3d Cir. 1960) (damage to finished product, caused by flaking and peeling of insured's defective paint, was covered property damage); *Meng v. Bituminous Casualty Corp.*, 626 F.Supp. 1237, 1239 (S.D.Miss.1986) ("injury to work" exclusion did not exclude liability to damage to other property caused by defective sprinkler); *Arcos Corp. v. American Mutual Liability Indemnity Insurance Co.*, 350 F.Supp. 380, 384–85 (E.D.Pa. 1972) (costs incurred in investigating, testing, ripping out and rewelding defective joints were covered by policy); *Hauenstein v. St. Paul Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954) (reduced market value of building caused by defective plaster constituted covered property damage); *Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.*, 90 Wis.2d 641, 280 N.W.2d 211 (1979) (operating costs incurred as a result of loss of use of electric furnaces were covered by policy).

Generally, where there is some damage to property other than that which consists of the insured's product, there is covered property damage. *St. Paul Fire and Marine Insurance Co. v. Sears, Roebuck & Co.*, 603 F.2d 780, 784 (9th Cir.1979); Note, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy*, 68 MINN.L.REV. 795, 804–09 (1984).

Additionally, Travelers relies on exclusion (j)(2) of the policy in support of its argument that the Trumbull claims were not covered. We need not even discuss the application of exclusion (j)(2) because Defendant did not originally rely on the exclusion when it denied coverage through its letter to Beckwith on May 19, 1978. In fact, Defendant did not seek to utilize this exclusion until after the commencement of the instant action. For reasons which we will elaborate in our discussion of the duty to defend *infra*, Travelers has waived any argument that exclusion (j)(2) applies.

Likewise, Travelers did not assert its contention that Beckwith breached the timely notice provision of the policy until well after it had withdrawn its coverage on May 19, 1978. For the reasons which follow, and in light of Travelers' confusion and vacillation regarding its duty to defend and indemnify Plaintiff, we are hardpressed to conceive of any way in which Travelers can maintain that it was prejudiced by Plaintiff's alleged failure to inform Defendant of the Trumbull claims "as soon as practicable." *See Wiseman v. United States*, 327 F.2d 701, 708 (3d Cir. 1964) (Pennsylvania law requires insurer to show prejudice where it has not received notice in the precise manner specified in the policy). 13A G. COUCH, on INSURANCE 2d § 49:330 at 494–95 & n. 15 (1982).

The issue of whether it might ultimately be determined that a failure of timely notice might relieve Travelers from indemnifying Beckwith from a recovery by Trumbull, presented no basis for Travelers' refusal to defend the Trumbull lawsuit which contained claims potentially within the scope of the policy's coverage. *Commercial Union Insurance Co. v. International Flavors & Fragrances, Inc.*, 633 F.Supp. 646, 651 (S.D.N.Y.1986). In the present case, before Travelers assumed the defense of the Trumbull case, it had more than sufficient knowledge of the facts alleged in the Trumbull complaint to decide the issue of coverage on any available ground, including timely notice of the occurrence. Nonetheless, Travelers not only unconditionally assumed the defense of the

Trumbull lawsuit for the compensatory damage claims, but did not deny coverage for another 13 months thereafter. When it finally did deny coverage, Travelers knew little more than what the Trumbull complaint had told it in April of 1977. As the following discussion will reveal, Travelers breached its duty to defend irrespective of any ultimate disposition regarding coverage of the Trumbull claims.

*Duty to Defend*

The law of Pennsylvania is well settled regarding an insurer's duty to defend its insured. In consideration for the insured's payment of premiums, the insurer becomes contractually obligated to defend its insured. *American Contract Bridge v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71, 75 (3d Cir.1985). This obligation arises whenever allegations against the insured state a claim which is *potentially* within the scope of the policy's coverage, even if such allegations are "groundless, false or fraudulent." *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 58, 188 A.2d 320, 321 (1963); *Zeitz v. Zurich General Accident Liability Insurance Co.,* 165 Pa.Super. 295, 67 A.2d 742 (1949). There were two obligations undertaken by Travelers: the obligation to indemnify Beckwith against Trumbull's damages and the separate duty to defend a lawsuit covered by the policies. It is well settled that an insurer's obligation to defend is separate and distinct from its duty to indemnify; the insurer's duty to defend is broader than its obligation to indemnify the insured. *Liberty Mutual Insurance Co. v. Pacific Indemnity Co.,* 557 F.Supp. 986, 989 (W.D.Pa.1983); *Gedeon,* 410 Pa. at 58–59, 188 A.2d at 322; 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE, § 4682 (Berdal ed. 1979) (hereinafter "APPLEMAN").

However, once a third party has raised allegations against an insured which potentially fall within the coverage provided, the insurer is obligated to defend its insured fully until it can confine the possibility of recovery to claims outside the coverage of the policy. *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750, 753 (2d Cir.1949); *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959). *See also Commercial Union Insurance Co. v. Pittsburgh Corning Corp.,* 789 F.2d at 218; *Bituminous Insurance Co. v. Pennsylvania Manufacturers' Association Insurance Co.,* 427 F.Supp. 539, 555 (E.D.Pa.1976). Therefore, it is clear that where a claim potentially may become one which is within the scope of the policy the insurer's refusal to defend at the outset of the dispute is a decision it makes at its own peril. *American Contract Bridge League,* 752 F.2d at 76; *Pittsburgh Plate Glass Co.,* 281 F.2d at 540; *Cadwallader,* 396 Pa. at 589, 152 A.2d at 488.

Conversely, "[t]here is no principle of Pennsylvania law that the duty to defend automatically 'attaches at the outset of the litigation and cannot afterwards terminate.'" *Commercial Union Insurance Co.,* 789 F.2d at 218. Pennsylvania courts have held that an insurance company is under no obligation to defend when the suit against its insured is based on a cause of action excluded from the policy's coverage. *See Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 594, 105 A.2d 304, 307 (1954); *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 179, 392 A.2d 738, 743 (1978). "However, if coverage (indemnification) depends upon the existence or nonexistence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as the facts are determined, and the claim is narrowed to one patently outside of coverage." *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17, 19 (E.D.Pa.1979).

In *Aetna Life and Casualty Co. v. McCabe,* 556 F.Supp. 1342, 1354 (E.D.Pa. 1983), the court stated "that 'a liability insurer, by assuming the defense of an action against the insured, is thereafter estopped to claim that the loss resulting to the insured from an adverse judgment [or settlement] in such action is not within the coverage of the policy, or to assert against the insured some other defense existing at

the time of the accident.'" *Id.* (quoting Annot., 38 A.L.R.2d 1148, 1150 (1954)). *See Jones v. Robbins,* 258 F.Supp. 585, 588 (E.D.Pa.1966), *aff'd,* 374 F.2d 1002 (3d Cir. 1967); *Perkoski v. Wilson,* 371 Pa. 553, 92 A.2d 189 (1952).

When the insurance company believes a claim is not covered, it may protect itself by a timely reservation of rights under the policy which fairly informs the insured of its position. *Aetna Life and Casualty Co. v. McCabe,* 556 F.Supp. at 1354–55. Insurers who contemplate refusing to indemnify a claim must inform their insureds so as to allow them to protect their interests and avoid detrimental reliance on indemnity. *Nichols v. American Casualty Co.,* 423 Pa. 480, 225 A.2d 80 (1966). If an insurer undertakes to defend a claim under a reservation of rights it is not precluded from denying coverage. *Brugnoli v. United National Insurance Co.,* 284 Pa.Super. 511, 426 A.2d 164 (1981). Under Pennsylvania law, "reservation of rights" letters do not require the assent of the insured and are given the same effect as a non-waiver agreement. *See Draft Systems, Inc. v. Alspach,* 756 F.2d 293, 296 (3d Cir. 1985) for a cogent review of the feasibility and utilization of non-waiver agreements and reservation of rights letters.

It is hornbook law that if an insurer assumes the insured's defense without sending the insured a reservation of rights letter or bringing a declaratory relief action, the insurer will later be precluded from denying coverage. *See generally,* 7C APPLEMAN, at §§ 4689, 4694. Moreover, in *Alspach,* the court stated that if the insurer affords representation without some understanding with its insured, the carrier may later be estopped from asserting an otherwise valid coverage defense. *Id.* at 296.

We now apply the above principles of law to the facts before us.

█ The Trumbull complaint, while not as specific in its allegations of damages as it might have been, contained sufficient information to put Travelers on notice that a claim of property damage, potentially covered by its policy, was being raised against Beckwith, its insured. As noted previously, the parties stipulated that the Trumbull complaint stated claims that were potentially within the scope of coverage, and this is buttressed by the internal memoranda of Travelers' personnel plus the Hill Report. Obviously, Travelers had a duty to defend any potential claims that were within the scope of the policy's coverage. *Gedeon, supra; Cadwallader, supra; Zeitz, supra.*

Alternatively, even if Travelers had a legitimate coverage defense regarding the Trumbull claims of property damage, it assumed the defense of the *Trumbull* case without reserving its rights as to indemnification. The record reveals that Travelers' denial letter of May 19, 1978 only informed Plaintiff that Trumbull's claim for punitive damages was not covered. In no way can this be construed as a denial of coverage as to the compensatory damages claims at issue here.

█ While some of Travelers' personnel considered filing a reservation of rights letter and/or a declaratory relief action to protect the carrier from having to indemnify Plaintiff, the record discloses that neither course of action was taken by Travelers, Beckwith's Appendix PX 3, 5, 6, 9, 11. Without any subsequent revelations excluding coverage and without conducting a proper investigation into the facts supporting the Trumbull claims, Travelers abruptly denied coverage on May 19, 1978, after Beckwith had relied on it for coverage for thirteen months. Based on this obdurate and contumacious conduct on the part of Travelers, we hold that it has waived and is estopped from raising any valid coverage defenses. *Aetna Life and Casualty Co. v. McCabe,* 556 F.Supp. at 1354. *See also Jones v. Robbins,* 258 F.Supp. 585 (E.D.Pa. 1966), *aff'd,* 374 F.2d 1002 (3d Cir.1967) (disclaimer of coverage more than two years after notice of claim); *New Amsterdam Casualty Co. v. Kelly,* 57 F.Supp. 209 (E.D.Pa.1944) (disclaimer of coverage nine months after notice of claim).

Here, Travelers had virtual carte blanche over the defense of the Trumbull case for a period of over two years, and Beckwith justifiably relied on Travelers for indemnification of all claims except the claim for punitive damages.

While Travelers denied coverage of the punitive damages claim, it still had a duty to defend that ancillary claim because, as we stated earlier, the duty to defend is broader than the duty to indemnify, and some of the claims for compensatory damages were potentially covered by the policy. *Gedeon, supra.* However, since the payment of punitive damages by the insurer is invalid and again public policy in Pennsylvania, *see D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981), we need not address that issue further.

Because of its reliance on Travelers to defend the compensatory damages claims, Beckwith was deprived of the opportunity to itself investigate and defend the Trumbull claims. The record in the case before us reveals that Travelers failed to conduct a proper investigation or a thorough discovery, and at one point, fearful of losing Plaintiff as a "valued account," offered to reassume the defense of the Trumbull claims if Plaintiff would drop its claim that it was prejudiced by Defendant's mishandling of the Trumbull case. Beckwith's Appendix PX 10, 14.

Travelers asserted in the policy the right and duty to "defend any suit against the insured ... and make such investigation, negotiation and settlement ... as it deems expedient." An insurer who asserts such a right stands in a fiduciary relationship toward the insured and is obligated to act in good faith and with due care in representing the insured's interests. *Gray v. National Mutual Insurance Co.,* 422 Pa. 500, 223 A.2d 8 (1966). In the instant case, Travelers failed to refrain from exhibiting a greater concern for its own interests than for those of its insured.

In conclusion, we find that: 1) the Trumbull complaint stated claims that were potentially covered by the insurance policy issued by Travelers to Beckwith; 2) Travelers breached its duty to defend Beckwith in the underlying Trumbull case; 3) Travelers failed to reserve its rights to contest indemnity regarding the compensatory damage claims raised in the Trumbull case; and 4) Travelers is estopped from denying coverage because Beckwith detrimentally relied on Travelers' policy for indemnification.

Accordingly, because there are not genuine issues of material fact, we will grant Plaintiff's motion for summary judgment on Counts One, Two and Three. In reaching this conclusion, we are cognizant of the procedural posture of this case and recognize that "the mere fact that cross-motions for summary judgment are filed cannot be taken to mean that no material facts are in dispute ..." *Riehl v. Travelers Insurance Co.,* 772 F.2d 1924 (3d Cir.1985). We also recognize the potential for complex legal issues to obscure the significance of the underlying and unresolved facts. *Id.* However, on the basis of the record developed in this case, the bulk of which originated from the underlying action, and after an exhaustive review of the facts, we cannot discern any genuine issues of material fact which should preclude our granting summary judgment in favor of the Plaintiff.

*Damages*

■ The law of Pennsylvania clearly recognizes that when an insurer breaches its duty to defend, the appropriate measure of damages is the cost of hiring substitute counsel and other defense costs. *American Contract Bridge League,* 752 F.2d at 76; *Gedeon,* 410 Pa. at 60, 188 A.2d at 322. Consequently, Beckwith is entitled to recover its attorneys' fees and defense costs in the Trumbull case.

■ In addition, we find that Beckwith is also entitled to recover the $100,000.00 it paid to settle the Trumbull claims on the theory that Travelers, by its defense of these claims for some thirteen months without any reservation of rights, was estopped to claim that the loss resulting to Beckwith (i.e., the $100,000.00 settlement

payment) was not within the policy's coverage. *Aetna Life and Casualty v. McCabe,* 556 F.Supp. at 1354. By asserting in its policy the right to handle all claims against the insured, including the right to "settlement of any such suit defended by the company as it deems expedient," Travelers, by its failure to act in good faith and with due care in representing the interests of Beckwith, is liable for the $100,000.00 Beckwith paid to settle the Trumbull lawsuit. *Gray,* 422 Pa. at 504, 223 A.2d at 9–10; *Gedeon,* 410 Pa. at 59–60, 188 A.2d at 322. *See also Oliver B. Cannon & Son v. Fidelity and Casualty Co. of New York,* 484 F.Supp. 1375, 1385–87 (D.Del.1980) (applying Pennsylvania law); Keeton, *Liability Insurance and Responsibility for Settlement,* 67 HARV.L.REV. 1136 (1954).

Moreover, in *Pacific Indemnity Co. v. Linn,* the United States Court of Appeals for the Third Circuit affirmed the district court's rationale that where settlement renders it impossible to determine factually and with exactitude what claims were actually covered, the duty to indemnify must follow the duty to defend. *Id.* at 766. Thus, Plaintiff is entitled to recover the $100,000.00 it paid to settle the Trumbull case.

A less settled question confronts us as to whether Beckwith can recover its attorneys' fees for bringing the instant action. Traditionally, American courts have required the parties to litigation to bear their own attorneys' fees in the absence of statutory or contractual requirements. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141, 147 (1975); *Chatham Communications, Inc. v. General Press Corp.,* 463 Pa. 292, 300–01, 344 A.2d 837, 842 (1975). However, when an insurance company wrongfully, unreasonably and in bad faith refuses to provide a defense to its insured in an underlying action brought by a third party, both Pennsylvania and federal courts applying Pennsylvania law have awarded attorneys' fees and costs incurred by the insured in bringing an action to establish the duties to defend and/or indemnify. *Pacific Indemnity Co. v. Linn,*

766 F.2d at 769; *Montgomery Ward & Co. v. Pacific Indemnity Co.,* 557 F.2d 51, 59–60 (3d Cir.1977); *Kelmo Enterprises Inc. v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 24, 426 A.2d 680, 685 (1981), *impliedly overruled on other grounds, see Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983).

As the Superior Court of Pennsylvania stated in *Kelmo:* "We agree that it would be anomalous to allow an insured attorneys' fees expended in defense of the underlying tort action but to deny the fees in an action brought to vindicate the contractual duty to defend." *Id.* 285 Pa.Super. at 21, 426 A.2d at 684. In support of this result, the *Kelmo* Court stated the following section of 7C APPLEMAN, § 4691 at 283:

> [The general rule, that a litigant is to bear his own attorneys' fees,] still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the [general] rule ... should be followed ..., it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above....

*Id.* Another commentator has stated that "[w]here the insurer has wrongfully refused to defend, it may become liable not only for attorneys' fees in the one action in which the insured is sued, but for fees in all other actions involving the insured as a result of its breach." S. SPEISER, ATTORNEYS' FEES, § 13.8 (1973) (footnotes omitted).

Defendant argues that attorneys' fees should not be awarded to Plaintiff in the instant action, which is not a declaratory action, since all of the cases relied on by Plaintiff to recover attorneys' fees in this case sought declaratory relief. We disagree and find no rational reason to draw a distinction between a declaratory action brought by insured and the present one, since both actions culminate from the insurer's breach of contract.

In addition, Travelers contends that there is no basis for a finding of bad faith to support an award of attorneys' fees since Count Four, which raised a "bad faith" action for punitive damages, was dismissed by a prior Order of this Court. We cannot agree with this contention and emphasize that Count Four did not seek attorneys' fees for the prosecution of this action; therefore its dismissal has no bearing on this matter.

In the present case, there is ample support in the factual record to substantiate a finding that Travelers' persistent refusal to defend "can only be characterized as unreasonable and lacking in the good faith required of an insurer with respect to its insured." *Pacific Indemnity Co. v. Linn*, 590 F.Supp. 643, 655 (E.D.Pa.1984), *aff'd*, 766 F.2d 754 (3d Cir.1985). Moreover, Travelers has failed to adduce any valid reasons for its vacillation and procrastination. Here, the obdurate conduct of the Defendant, as deduced from a review of the facts, illustrates a general lack of good faith dealing by Travelers, which, after all, had a fiduciary duty to protect the interests of its insured. *Gray, supra; Gedeon, supra.*

■ In conclusion, we hold that Beckwith is entitled to recover whatever expenses it was compelled to incur in exercising its rights, including reasonable attorneys' fees and defense costs expended in this action since they were incurred as a direct loss incident to the breach of contract. 7C APPLEMAN, § 4691 at 283. We do not adopt this as a general principle, but believe that the ends of justice require its application under this set of facts. *See*

*Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702, 707 (1973) (court may impose attorneys' fees under its inherent equitable power); *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756–57 (9th Cir.1986) (same). *See also* 6 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 54.77[2], at 1709–10 (2d ed. 1972).

Accordingly, counsel for the Plaintiff are directed to file an affidavit within 20 days of the date of filing of this opinion setting forth the hours reasonably expended by them in defending Plaintiff in the Trumbull case and in representing Plaintiff in this action along with their usual hourly rates for such services in accordance with *Tomallo v. Heckler*, 623 F.Supp. 1046 (W.D. Pa.1985) (court must have a factual basis for its fee determination). Defense counsel may respond, by affidavits, to the Plaintiff's submission within ten (10) days thereafter.

## ORDER

AND NOW, to-wit, this 11th day of July, 1986, for the reasons stated in the foregoing Opinion, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Plaintiff's Motion for Summary Judgment in the above-captioned matter be and hereby is GRANTED;

2. Defendant's Motion for Summary Judgment in the above-captioned matter be and hereby is DENIED;

3. Judgment is entered in favor of the Plaintiff for $100,000.00 with interest from November 12, 1982;

4. Counsel for the Plaintiff are directed to file an affidavit within twenty (20) days of the date of filing this Order setting forth the hours reasonably expended by them in defending Plaintiff in the Trumbull case and in representing Plaintiff in this action along with their usual hourly rates for such services;

5. Counsel for the Defendant may respond, by affidavit, to the Plaintiff's submission within ten (10) days thereafter.